UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT GREGORY, | : | NO. 1:08-cv-00014 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | **OPINION AND ORDER** |
| | : | |
| | : | |
| UNIVERSITY HOSPITAL, INC. et | : | |
| al., | : | |
| | : | |
| Defendants. | : | |

This matter is before the Court on Defendants' Motion for
Summary Judgment (doc. 28), Plaintiff's Response (doc. 30), and
Defendants' Reply (doc. 42).   For the reasons indicated herein,
the Court DENIES Defendants' Motion.

I.  BACKGROUND

Plaintiff, Robert Gregory, an African-American man born
in 1950, was employed by University Hospital, Inc. ("UHI") from
1992 until he was terminated in January 2008 (doc. 30).   Plaintiff
alleges Defendants' treatment of Plaintiff while employed and his
termination constitute age discrimination in violation of the Age
Discrimination in Employment Act ("ADEA") and O.R.C. Chapter 4112,
race discrimination in violation of Title VII and O.R.C. Chapter
4112 and retaliation in violation of Title VII and O.R.C. Chapter
4112 (doc. 1).   The facts are as follows.

Plaintiff originally became employed with UHI in 1992 in
the position of Director of Food & Nutrition Services (doc. 30).

Plaintiff's qualifications for this position included holding an MBA, being a registered and licensed dietician, and working in the food and nutrition industry for seventeen years prior to his position with UHI (Id.). Plaintiff was responsible for UHI's cafeteria and patient meal services (Id.).

In 1998, UHI became a member of The Health Alliance of Greater Cincinnati ("THA"), and as a result, a position became available known as the Director of Food and Nutrition Services for THA (Id.). Plaintiff applied for this position, however, it was ultimately awarded to Rohn Vickers ("Vickers"), a Caucasian male (Id.). At this time, Plaintiff filled the position of Manager of the Food and Nutrition Services Department and reported to Vickers (Id.). From 1998 to 2005, Vickers completed annual evaluations of Plaintiff's performance and gave Plaintiff high reviews (Id.).[1]

In 2004, a temporary vice president position became available, which included responsibilities for food and nutrition, environmental, and volunteer services as well as patient transportation and pastoral care (Id.). Defendants did not award Plaintiff this position, however, Plaintiff contends that after himself and others complained, Plaintiff received the position (Id.).

In February 2005, per the request of others, Plaintiff

---

[1] In 1999-2004, Vickers evaluated Gregory's performance to be "Exceptionally Effective" (doc. 30). In 2005, Gregory's performance was evaluated to be "Effective" (Id.).

spoke with Ken Hanover ("Hanover"), President and Chief Executive Officer of THA, and Dorman Fawley ("Fawley"), Executive Vice President and Chief Operating Officer of THA (Id.). During these conversations, Plaintiff shared concerns that he and others had about the treatment of African Americans employed at UHI (Id.).

In December 2005, Michael Grodi, Plaintiff's superior, retired from his position at UHI (doc. 28). In light of this vacated position and a restructuring of duties, three Administrative Divisional Director positions opened up (doc. 30). Executive Director of Operations, Lee Ann Liska ("Liska") was responsible for filling these three positions. Liska reported directly to Jim Kingsbury ("Kingsbury"), Executive Director for UHI (Id.).

Two of these positions were not posted, and instead given to specific employees. (Id.). Plaintiff alleges that he complained to Jonathon Small ("Small"), Vice President of Human Resources, because he was qualified for the positions and they were simply filled by other employees (doc. 30). Plaintiff claimed that Small told him he would not get justice from within the organization (Id.). Defendants claim the employees who were given these positions were actually just "enhanced" from their previous positions (doc. 28).

Liska posted the third position, Division Director of Support Services (doc. 30), on the UHI internal-employee network

(doc. 28). Plaintiff contends that two individuals were qualified for the position; himself and Stephen Potter ("Potter"), a Caucasian male born March 30, 1968 (doc. 30). Plaintiff alleges that Liska advised Potter to look for the position, but that Plaintiff received no such encouragement (<u>Id</u>.).

Liska posted the position in early 2006 with the posting to remain open for 5 days (<u>Id</u>.). No closing date was listed on the posting (<u>Id</u>.). Potter applied during the period (<u>Id</u>.). Plaintiff alleges that at the end of the week, he learned of a posting from Small which Small guessed may have been the position Plaintiff had asked him about (<u>Id</u>.). Plaintiff claims he told Small that he intended to apply (<u>Id</u>.).

Plaintiff claims that he intended to complete the application over the weekend and submit it the following week, however, the job posting had closed by the following Monday (<u>Id</u>.). Plaintiff claims that based off of the duration of other postings, it was not unreasonable to expect the posting to remain open for longer than 5 days (<u>Id</u>.). Defendants allege that Plaintiff never intended to apply for the position because he was upset that the job was not given to him (doc. 42).

After the posting expired, Plaintiff went to speak with Liska to express his interest in the position (<u>Id</u>.). Plaintiff alleges that Liska did not allow Plaintiff to apply for the position after it had closed (doc. 30). Defendants claim that

despite his failure to apply, Liska still interviewed Plaintiff for the position (doc. 28). Ultimately, Potter was awarded the position in March 2006 and as such, became Plaintiff's co-supervisor along with Vickers (Id.).

After Plaintiff was not promoted, he spoke with Reverend Damon Lynch Jr. ("Lynch"), A UHI board member (doc. 30). Rev. Lynch agreed to communicate his concern to Kingsbury over the failure to promote Gregory and minorities in general (Id.). Plaintiff also alleges that he complained to Hanover about not being permitted to apply for the position and about age and race issues(Id.).

On April 9, 2006, Plaintiff met with Kingsbury (doc. 28). At this time, Plaintiff was placed on a Performance Improvement Plan ("PIP") (Id.). Plaintiff claims that he was placed on the PIP as punishment for complaining to Kingsbury's superiors and because Kingsbury did not trust him (Id.). Defendants claim that the PIP was suggested by Lynch in order to measure Plaintiff's progress in light of the confusion over the promotion (doc. 42). Defendants also allege the PIP contained several goals for Plaintiff in areas where Vickers and Potter believed Plaintiff needed improvement (doc. 28).

Plaintiff claims that he actually completed the PIP but no one informed him of the fact (doc. 30). Defendants allege Vickers met with Plaintiff in June 2006 to discuss Plaintiff's

failure to meet some of the performance standards in the PIP (doc. 28). On July 5, 2006, Potter and Jolaina Jeff-Cartier, a human resources consultant, recommended that Plaintiff be terminated (doc. 28). Vickers, Plaintiff's other co-supervisor, decided that Plaintiff should be given more chances, and Plaintiff remained employed at UHI (<u>Id</u>.).

Defendants allege that several incidents occurred at UHI in the time after the consideration of Plaintiff's termination (doc. 28). First, in August 2006, Defendants claim Plaintiff received Corrective Action for offering a position to an applicant without the necessary approval (<u>Id</u>.). Defendants also allege, that in 2006, UHI's human resources department learned Plaintiff had been intentionally underpaying union employees (<u>Id</u>.). In December 2006, Defendants claim Plaintiff was disciplined for having harassed a female subordinate (<u>Id</u>.). Plaintiff disputes these allegations and claims that the accusations were unsubstantiated (doc. 30).

Within this period, specifically, in October 2006, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") (<u>Id</u>.). In the EEOC charge, Plaintiff alleged that his placement on the PIP and not receiving the Division Director of Support Services position constituted retaliation and age and race discrimination (<u>Id</u>.). Plaintiff claims that while this charge was still pending, Potter

and Vickers discussed the legal implications of taking action against Plaintiff (Id.).

At the end of 2006, Plaintiff received his first annual evaluation in which Potter served as his co-supervisor (Id.). This evaluation assessed Plaintiff's performance to be "Less than Effective" (Id.).

In June 2007, Defendants allege that Plaintiff's superiors began looking into the cash handling practices in Plaintiff's department (doc. 28). Defendants claim that Potter learned the credit card receipts for Plaintiff's cafeteria were not being closed out according to protocol and Potter issued Plaintiff a written warning (Id.). Additionally, Defendants claim that Potter learned that cash from Plaintiff's cafeteria received in mid-May was not deposited until mid-June (Id.). Defendants claim that Potter alerted Plaintiff of these cash handling problems at the end of June (doc. 44). Defendants also allege that in July 2007, there were two thefts reported from Plaintiff's safe room (doc. 28).

In August 2007, UHI commissioned an audit of the cash handling practices in Plaintiff's cafeteria (doc. 30). On September 14, 2007, the audit revealed that there was $5,504.30 missing from Plaintiff's cafeteria between June 1, 2007, and July 31, 2007 (doc. 28). At this time, the audit was expanded to cover a broader period of time (Id.).

Defendants claim that Plaintiff never corrected the

problems with money handling in his cafeteria, even as late as November 2007 (Id.). Plaintiff claims he took steps to correct the mishandling of money when he was made aware of the problem and as a result, there were no losses after the summer of 2007 (doc. 30).

In September 2007, Vickers moved to another position leaving Potter as Plaintiff's only supervisor (Id.). Before Vickers left, Plaintiff alleges Vickers told Kingsbury and Liska that Plaintiff's department needed additional assistance (Id.).

In October 2007, Plaintiff's EEOC charge was dismissed (Id.), and he received Notice of Right to Sue (doc. 44). In November 2007, the previously commissioned audit revealed that more than $27,500 was missing from Plaintiff's cafeteria between June 2006 and August 2007 (Id.). On December 3, 2007, Plaintiff's counsel wrote to UHI and THA and explained that Gregory had received a Notice of Right to Sue from the EEOC (Id.). This correspondence further explained that he sought a resolution of the dispute (doc. 30).

On January 2, 2008, Gregory received his 2007 evaluation and was terminated (doc. 28). UHI also terminated Kai Ulmer, a supervisor who shared responsibility for cash handling in Plaintiff's department (Id.). Plaintiff was replaced by John Pramuck, Caucasian and born July 1, 1960 (Id.).

Plaintiff alleges the treatment he experienced was part of a larger pattern of discrimination against African Americans at

8

UHI (doc. 30). As evidence of such, Plaintiff points to testimony of employees who believe they were discriminated against themselves or believe they observed discrimination against others. (Id.). Plaintiff also alleges that Hanover and Fawley expressed concern over the treatment of minorities at UHI, specifically African Americans (Id.). Finally, Plaintiff points out that two consulting firms were hired by Defendant to work with the hospital on diversity issues (Id.).

On January 4, 2008, Plaintiff filed the Complaint in this matter, alleging Defendants' failure to promote Plaintiff and ultimate termination of Plaintiff constitute age discrimination in violation of the Age Discrimination in Employment Act (ADEA) and O.R.C. Chapter 4112, race discrimination in violation of Title VII and O.R.C. Chapter 4112 and retaliation in violation of Title VII and O.R.C. Chapter 4112 (doc. 1). Plaintiff further alleges that the Defendants' failure to promote Plaintiff, placement of Plaintiff on a PIP, poor performance evaluation and ultimate termination all evidence that Plaintiff was retaliated against in violation of Title VII and O.R.C. Chapter 4112.

Thereafter, Defendants filed the instant motion seeking summary judgment on each of Plaintiff's claims (doc. 28). The Court held a hearing on this motion on May 21, 2009.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. <u>See also</u>, <u>e.g.</u>, <u>Osborn v. Ashland County Bd. of Alcohol, Drug Addiction, and Mental Health Servs.</u>, 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, this Court "must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Patton v. Bearden</u>, 8 F.3d 343, 346 (6th Cir. 1993), <u>quoting in part</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-252 (1986).

The process of moving for summary judgment and the respective burdens it imposes upon the movant and non-movant are well-settled. First, the movant bears the burden of identifying the portion of the record that demonstrates the absence of a genuine issue of material fact. <u>Celotext Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The movant may do so by merely identifying that the non-moving party has no evidence to support an essential element of its case. <u>See</u> <u>Barnhart v. Pickrel, Schaeffer, & Eheling Co., L.P.A.</u>, 12 F.3d 1382, 1389 (6th Cir. 1993).

If the movant satisfies its requirement, the non-movant must then submit evidence establishing that a material fact exists that supports an essential element of any claim or defense at issue

in which it bears the burden of proof at trial, even if the movant has not submitted evidence negating the existence of that material fact. See Celotex, 477 U.S. at 324. The non-movant must submit more than a mere "scintilla of evidence" to establish that a factual dispute exists. Anderson, 477 U.S. at 252. Furthermore, the factual dispute must involve a material fact: a factual dispute as to an ancillary fact "will not defeat an otherwise properly supported motion for summary judgment." Id. at 247-248. Accordingly, the non-movant must submit "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive a motion for summary judgment and proceed to trial on the merits. Moore v. Phillip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993). However, the Court must view all evidence, facts, and reasonable inferences in the light most favorable to the non-movant. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

If the non-moving party satisfies its requirement, the burden shifts back to the movant, who ultimately must demonstrate that no material facts are in dispute in order to succeed on a motion for summary judgment. See Id. at 587. The district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

## III. DISCUSSION

Defendants seek summary judgment on each of Plaintiff's claims, as well as for Defendant the Health Alliance individually (doc. 28). The Court will address each of Defendants' arguments in turn.

### A. Race Discrimination Claims

Title VII prohibits an employer from terminating or otherwise discriminating against an employee on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. Chapter 4112.02 of the Ohio Revised Code prohibits an employer from terminating an employee on the basis of color, religion, sex, military status, national origin, disability, age or ancestry. Ohio Rev. Code Ann. §4112.02. Because Ohio anti-discrimination laws prohibit the same conduct as Title VII, State claims are generally construed in the same manner as federal laws. See Shoemaker-Stephen v. Montgomery County Bd. of Com'rs 262 F.Supp.2d 866, 874 (S.D.Ohio 2003).

This Court analyzes discrimination claims brought under Title VII, 42 U.S.C. § 2000e et. seq. and Chapter 4112.02 of the Ohio Revised Code, under the McDonnell Douglas burden shifting framework. Mitchell v. Toledo Hosp., 964 F.2d 577, 582-583 (6th Cir. 1992). Under this framework, the plaintiff first bears the burden of proving a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-804 (1973). The burden

12

of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for the action. <u>Id</u>. Once a non-discriminatory explanation is proffered, the burden shifts back to the plaintiff to show that this reason is merely a pretext. <u>Id</u>.

### 1. **Prima** **Facie** **Case**

The plaintiff may establish a <u>prima</u> <u>facie</u> case of discrimination by presenting either direct or indirect evidence. <u>Allen v. Ethicon, Inc.</u>, 919 F. Supp. 1093, 1098 (S.D. Ohio 1996). In many cases, evidence of direct discrimination can be difficult to produce, so the law allows the plaintiff to raise an inference of discrimination through circumstantial evidence. <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802. Circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 570 (6th Cir. 2003).

To establish a <u>prima</u> <u>facie</u> case of discrimination using circumstantial evidence, the plaintiff must demonstrate that he (1) is a member of a protected class[2]; (2) was rejected from the position or discharged; (3) applied and was qualified for the position; and (4) was replaced by someone outside of the protected class. <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 581 (6th Cir. 1992).

---

[2] Title VII protects against discrimination of all racial groups. <u>See</u> <u>Murray</u> <u>v</u>. <u>Thistledown</u> <u>Racing</u> <u>Club</u>, <u>Inc</u>., 770 F.2d 63, 67 (6th Cir. 1985).

13

As an alternate to the fourth prong of this test, the plaintiff can prove that a comparable member of a non-protected class was treated more favorably. <u>Id</u>. at 582-583. In order to satisfy this requirement, a plaintiff must show that he (1) is a member of a protected class; and (2) was treated differently than similarly-situated non-minority employees for the same or similar conduct. <u>Id</u>.

"The burden of establishing a <u>prima facie</u> case of disparate treatment is not onerous." <u>Texas Dept. Of Cmty. Affairs v. Burdine</u>, 240 U.S. 248, 253-254 (1981). The plaintiff must only prove the necessary elements by a preponderance of the evidence. <u>Id</u>. Once a plaintiff establishes a <u>prima facie</u> case of discrimination, there is a presumption of discrimination, and though the burden of production shifts to the employer, the burden of persuasion remains with the plaintiff throughout. <u>Id</u>. at 254-256.

In the Complaint, Plaintiff points to two instances of race discrimination; (1) failure to promote Plaintiff in 2006; and (2) Plaintiff's termination (doc. 30). In their Motion for Summary Judgment, Defendants do not dispute that Plaintiff can establish a <u>prima facie</u> case of race discrimination for Plaintiff's termination, but do argue that Plaintiff cannot establish his failure to promote claim because Plaintiff did not apply for the job in question (doc. 28).

In response, Plaintiff argues that he can establish a _prima facie_ case with regards to both instances; (1) the failure to promote Plaintiff in 2006; and (2) Plaintiff's termination (doc. 30). With respect to the failure to promote Plaintiff, Plaintiff claims that a _prima facie_ case can be established by showing Plaintiff (1) was a member of a protected class; (2) was qualified; (3) suffered an adverse employment action in being passed over for a promotion; and (4) was replaced by a Caucasian (_Id_.). With regard to Plaintiff's termination, Plaintiff notes that Defendants concede there is a _prima facie_ case of race discrimination charge (_Id_.).

The Court will confine its analysis to the _McDonnell Douglas_ burden shifting approach, as Plaintiff does not offer any direct evidence of race discrimination. With regard to Plaintiff's failure to promote claim, the Court finds there is a genuine issue of material fact as to whether Plaintiff has established the third prong of its _prima facie_ case. As Defendants point out, Plaintiff did fail to apply for the position and the _McDonnell Douglas_ framework requires that Plaintiff apply for the position from which he was refused. However, the Court finds that there is a question of material fact as to whether Defendants prevented Plaintiff from applying in light of the limited time that the posting remained open and the alleged encouragement another employee received which Plaintiff did not. Therefore, the Court finds that summary

judgment is not appropriate on Plaintiff's failure to promote, race discrimination claim.

Because Defendants concede that Plaintiff can establish a prima facie case regarding Plaintiff's termination, and Plaintiff has proffered evidence for each of the prongs, the Court finds that summary judgment is not appropriate on the contention that Plaintiff cannot establish a prima facie case of race discrimination for his termination.

## 2. Legitimate, Non-discriminatory Reason

Once a prima facie case is established by the plaintiff, the burden then shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse employment action. See McDonnell Douglas, 411 U.S. at 802-803; See also Burdine, 450 U.S. at 254-255. The employer need not persuade the court that the proffered reasons were the true motivation for the adverse employment action, but instead, raise an issue of material fact as to the motivation of the employer. Id. The explanation must be legally sufficient in order for a judgment in favor of the employer. Id.

Defendants argue they have met the burden of articulating a legitimate, non-discriminatory reason for the termination of Plaintiff (doc. 28). Defendants assert that the money missing from Plaintiff's cafeteria is a sufficient reason for termination of Plaintiff (Id.).

In Plaintiff's response, he does not dispute that Defendants have offered legitimate, non-discriminatory reasons for their actions (doc. 30). In regard to Plaintiff's failure to promote race discrimination claim, Plaintiff notes that Defendants appear to cite Plaintiff's failure to apply for the position or the determination that Potter was the best qualified individual (<u>Id</u>.). Plaintiffs also note Defendants' argument that Plaintiff's termination was a result of the "mishandling of cash" (<u>Id</u>.).

Defendants reply by emphasizing Plaintiff's alleged misconduct while employed at UHI (doc. 42). Defendants explain that the failure to promote Plaintiff was a result of his poor performance and his bypassing of hospital protocol in the hiring of Kai Ulmer (<u>Id</u>.). Defendants further allege that Plaintiff's termination was a result of his prior poor performance, the underpaying of union employees and the harassment of a female subordinate (<u>Id</u>.). Defendants go on to explain that these incidents, combined with the ultimate mishandling of money revealed by the audit, serve as legitimate reasons for Plaintiff's termination (<u>Id</u>.).

The Court finds that Defendant's explanation meets this burden of production.

### 3. Pretext

If an employer is able to articulate a legitimate, non-discriminatory reason for the adverse employment action, then the

burden of production shifts back to the Plaintiff to show that this reason is only a pretext. See Burdine, 450 U.S. at 254-255. The burden of production then merges with the ultimate burden of persuading the court that he has been the object of intentional discrimination. Id.

In order to prove pretext, Plaintiff must prove by a preponderance of the evidence "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994). The plaintiff may not simply rely on prima facie evidence in order to show pretext, but must produce some new evidence indicative of discrimination. Id. at 1084.

Defendants contend that the reason offered for Plaintiff's termination is truly legitimate and not merely a pretext (doc. 28). Defendants further argue that under the Manzer factors for proving pretext, Plaintiff will be unable to prove that Defendants' reasons were only a pretext (Id. citing Manzer, 29 F.3d 1078, 1084). Specifically, Defendants claim that (1) the mishandling of money in Plaintiff's cafeteria is based in fact; (2) failure to properly account for funds in the workplace would prompt a termination under any employer's standards; and (3) the reasons Defendants cited for Plaintiff's termination were sufficient to prompt Plaintiff's termination (Id.)

Plaintiff replies by arguing the reasons proffered by Defendants for the failure to promote Plaintiff and his termination were in fact pretexts (doc. 30). With regard to the failure to promote Plaintiff, Plaintiff concedes he did not apply but argues Liska prevented him from applying by encouraging only Potter to apply then removing the posting before Plaintiff had a chance to apply (Id.). With regard to Defendants' argument that Potter was the best qualified individual that applied, Plaintiff cites Liska's deposition indicating that Plaintiff was qualified for the position (Id.). As further evidence of pretext, Plaintiff points out that Defendants' have passed Plaintiff up for promotions in other years (Id.). Plaintiff also argues that Defendants have a history of treating other African Americans poorly (Id.).

Further, Plaintiff contends he was not aware of the cash mishandling because he was no longer receiving monthly reports documenting the cash handling in his department (Id.). Plaintiff argues that in previous instances where he was aware of thefts or losses, he was well known for aggressively dealing with the situations (Id.). Plaintiff further contends that when he was made aware of the losses, he took steps to correct the issue including changing the combination to the safe and limiting access to the safe (Id.). Plaintiff concedes that during the fall of 2007, he made some deposits late, however, Plaintiff argues this was due to short staffing and did not ultimately cause any losses (Id.).

19

Plaintiff concludes by alleging other departments of UHI had money missing and those managers retained their positions (Id.). Plaintiff also emphasizes that the gap in time between the discovery of the money mishandling and Plaintiff's termination provides evidence that the money mishandling was not Defendants' true motive (Id.).

In Defendants' reply, Defendants argue Plaintiff does not allege any specific race discrimination against Plaintiff, and instead relies on evidence of discrimination in the system (doc. 42). Defendants emphasize that Plaintiff can offer no evidence of any race discrimination that specifically affected him (Id.). Defendants further argue that the reasons for the failure to promote Plaintiff, his placement on a PIP, and his termination were legitimate and were not a pretext to discrimination against Plaintiff based on his race (Id.).

The Court finds that material questions of fact remain as to Defendants' true motivation for failing to promote Plaintiff and for his ultimate termination. While it is true that Plaintiff does not offer direct evidence of race discrimination and instead relies in part on evidence of a system-wide pattern of discrimination against African Americans, the Court notes the McDonnell Douglas framework allows a Plaintiff to prove discrimination without direct evidence. Moreover, evidence of a pattern of system-wide discrimination can be relevant to proving an otherwise viable,

individual claim for disparate treatment. Bacon v. Honda of America
Mfg., 370 F.3d 565 575 (6th Cir. 2004).

Furthermore, the Sixth Circuit in Singfield noted "Courts
have recognized that in discrimination and retaliation cases, an
employer's true motivations are particularly difficult to
ascertain." 389 F.3d at 564 (citing United States Postal Serv. Bd.
of Governors v. Aikens, 460 U.S. 711, 716 (1983) (acknowledging
that discrimination cases present difficult issues for the trier of
fact, as "[t]here will seldom be 'eyewitness' testimony as to the
employer's mental processes"). The Court in Singfield further
stated that such factual determinations are frequently
inappropriate for summary judgment. Id. (citing Lowe v. City of
Monrovia, 775 F.2d 998, 1009 (9th Cir.1985) (stating that very
little additional evidence is required to raise a genuine issue of
fact regarding motive, and concluding that summary judgment on the
merits is ordinarily inappropriate once a prima facie case has been
established)).

With respect to Plaintiff's failure to promote claim, the
Court finds that genuine questions of material fact exist
surrounding the circumstances under which Plaintiff was denied a
promotion. Considering the facts in the light most favorable to
Plaintiff, a reasonable jury may find Defendants took steps to
prevent Plaintiff from applying. Furthermore, a reasonable jury
may find Plaintiff was qualified for the position and Defendants'

asserting that Potter was the most qualified applicant was a pretext. Therefore, the Court finds that summary judgment is not appropriate on Plaintiff's race discrimination claim concerning Defendants' failure to promote Plaintiff.

With respect to Plaintiff's termination claim, the Court notes that genuine issues of material fact exist concerning the reasons given for Plaintiff's termination. A reasonable jury may conclude Plaintiff was not aware of any money mishandling problem until late in 2007 or that Plaintiff took appropriate steps to resolve the problem. Furthermore, Plaintiff disputes many of the disciplinary issues cited by Defendants in the 2006 and 2007 performance appraisals. Therefore, the Court finds that genuine issues of material fact exist and it is improper to award summary judgment on the race discrimination claim concerning Plaintiff's termination.

**B. Age Discrimination Claims**

The ADEA prohibits an employer from terminating or otherwise discriminating against an employee on the basis of age. 29 U.S.C. § 623(a)(1). Chapter 4112.02 of the Ohio Revised Code prohibits an employer from terminating an employee on the basis of color, religion, sex, military status, national origin, disability, age or ancestry. Ohio Rev. Code Ann. §4112.02. This Court analyzes discrimination claims brought under ADEA, 29 U.S.C. 621 et. seq under the McDonnell Douglas burden shifting framework, as described

above. <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 582-583 (6th Cir. 1992); <u>See</u> <u>also</u> <u>Grosjean v. First Energy Corp</u>., 349 F.3d 332, 336 (6th Cir. 2003). Ohio age discrimination claims are analyzed in a manner parallel to federal age discrimination laws. <u>See</u> <u>Erceqovich v. Goodyear Tire & Rubber Co.</u>, 154 F.3d 344, 357 (6th Cir. 1998).

## 1. **Prima Facie** Case

The standard for proving a <u>prima</u> <u>facie</u> case of age discrimination is the same standard used to prove a <u>prima</u> <u>facie</u> case of race discrimination. A plaintiff must prove he (1) is a member of a protected class[3]; (2) was subject to an adverse employment action; (3) applied and was qualified for the position; and (4) was replaced by someone outside the protected class, <u>Policastro v. Northwest Airlines, Inc.</u>, 297 F.3d 535, 538-539 (6th Cir. 2002), or was replaced by a substantially younger employee, <u>Grosjean</u>, 349 F.3d at 335. Alternately, a plaintiff may satisfy the fourth prong by showing that a comparable non-protected person was treated better than the plaintiff. <u>Mitchell</u>, 964 F.2d at 582-583.

Defendants assert Plaintiff is unable to establish a <u>prima</u> <u>facie</u> case of age discrimination for Plaintiff's termination (doc. 28). Defendants do not dispute that Plaintiff is a member of a protected class, was qualified and was discharged (<u>Id</u>.). However,

---

[3] The protected class under ADEA, 29 U.S.C. § 623 age discrimination claims include persons aged over 40. <u>See</u> <u>Grosjean v. First Energy Corp</u>., 349 F.3d 332, 335 (6th Cir. 2003).

Defendants emphasize that the employee who replaced Plaintiff after he was terminated was 48 years old and, therefore, also a member of the protected class (Id.). Defendants also point out that Plaintiff does not offer any evidence of similarly situated, comparable employees who are not members of a protected class and treated more favorable than Plaintiff (Id).

Plaintiff responds by citing the existence of two separate instances of age discrimination; (1) failure of Defendants to promote Plaintiff in 2006; and (2) Plaintiff's termination (doc. 30). First, Plaintiff asserts that he can establish a prima facie case for age discrimination under the McDonnell Douglas framework with respect to Defendants' failure to promote Plaintiff to the Division Director of Support Services in 2006 (Id.). Plaintiff argues he (1) was 56 years old at the time of the decision; (2) was qualified; (3) did not receive the promotion; and (4) the position was awarded to Potter, an employee 18 years younger than Plaintiff (Id.).

Plaintiff also contends he can establish a prima facie case of age discrimination under the McDonnell Douglas framework for Plaintiff's termination. Plaintiff argues he (1) was 57 years old at the time of the decision; (2) was qualified; (3) was terminated; and (4) was replaced by Pramuck, an employee 10 years younger than Plaintiff (Id.).

Defendants respond by emphasizing that Plaintiff has

24

failed to allege any evidence of age discrimination in either the
failure to promote Plaintiff or his termination (doc. 42).
Defendants emphasize that all of Plaintiff's accusations involve
only race discrimination or retaliation (Id.).

The Court finds that despite the fact that Plaintiff has
failed to cite direct evidence of age discrimination, Plaintiff can
still establish a prima facie case using indirect evidence. See
Manzer, 29 F.3d at 1081.

With respect to Plaintiff's age discrimination claim
concerning the failure to promote Plaintiff, the Court finds that
a reasonable jury could find Plaintiff established a prima facie
case.  As discussed above, the Court finds that further
consideration is necessary in order to determine if Defendants
prevented Plaintiff from applying to the position.  Therefore, the
Court finds that summary judgment is not appropriate on the claim
that Plaintiff is unable to establish a prima facie case for
Plaintiff's age discrimination, failure to promote claim.

With respect to Plaintiff's age discrimination claim
concerning Plaintiff's termination, the Court finds that a
reasonable jury may find Plaintiff has established a prima facie
case of age discrimination for Plaintiff's termination. While
Defendants concede Plaintiff was qualified, was terminated, and was
a member of a protected class, they contend that Plaintiff cannot
establish a prima facie case because the employee who replaced

Plaintiff was also within the protected class. However, a plaintiff may prove the fourth prong by showing he was replaced by someone significantly younger. Grosjean, 349 F.3d at 335. The Sixth Circuit has interpreted "significantly younger" to mean someone eight or more years younger. Id. at 340. Because Plaintiff was replaced by someone ten years his junior, this Court finds there is sufficient evidence that a reasonable jury may find that Plaintiff established a prima facie case of age discrimination concerning Plaintiff's termination.

### 2. Legitimate, Non-discriminatory Reason

The standard for establishing a legitimate, non-discriminatory reason for action is the same standard used for Title VII race discrimination cases discussed above. See Grosjean, 349 F.3d 332, 335.

Defendants contend that even if Plaintiff was able to establish a prima facie case of age discrimination, there exists a legitimate, non-discriminatory reason for Plaintiff's termination (Id.). Defendants assert that the mishandling of the cash in Plaintiff's cafeteria was a legitimate reason for Plaintiff's termination (Id.).

In Plaintiff's reply, he does not specifically dispute that the reasons proffered by Defendants are not legitimate (doc. 30).

Defendants respond by asserting the Plaintiff has failed

26

to offer any evidence of age discrimination in any instance (doc. 42). As in their argument against race discrimination, Defendants emphasize that the alleged misconduct by Plaintiff and mishandling of cash were the true motivation for the failure to promote Plaintiff and his termination (Id.).

With respect to both of Plaintiff's age discrimination claims, the Court finds that Defendants' explanation meet its burden for a legitimate, non-discriminatory reason.

### 3. Pretext

The standard for establishing a pretext is the same standard used for Title VII race discrimination cases discussed above. See Grosjean, 349 F.3d 332, 335.

Defendants contend the reasons proffered for the failure to promote Plaintiff and his termination are not a pretext, and that Plaintiff will be unable to prove otherwise (doc. 28). Specifically, Defendants claim (1) the mishandling of money in Plaintiff's cafeteria is based in fact; (2) failure to properly account for funds in the workplace would prompt a termination under any employer's standards; and (3) the reasons Defendants cited for Plaintiff's termination were sufficient to prompt Plaintiff's termination (Id.).

Plaintiff argues that Defendants' true motivation was age discrimination and their proffered reasons were mere pretexts for the failure to promote Plaintiff and his termination (doc. 30).

To show these reasons were only pretexts, Plaintiff relies on the explanations for pretext in his race discrimination claim for failure to promote and termination (Id.).

Defendants reply by reiterating that summary judgment is appropriate because Plaintiff has failed to offer any evidence of pretext (doc. 42). Defendants emphasize that there is no evidence of age discrimination anywhere in Plaintiff's explanation, and that the legitimate, non-discriminatory reasons offered by Defendants were the true motivating factors behind the 2006 job posting and Plaintiff's termination (Id.).

For the same reasons discussed in Plaintiff's race discrimination claim, the Court finds that a reasonable jury may find Defendants' proffered reasons in failing to promote Plaintiff and terminating him were pretexts. There are issues of material fact as to whether Plaintiff was qualified for the 2006 position and whether he was prevented from applying. There are also issues of material fact as to how much Plaintiff knew of the cash handling practices in his cafeteria and whether he took steps to remedy the problem.

While Plaintiff has not offered a large amount of evidence concerning any allegations about age discrimination, the Court reiterates that true motivation for employment action can be hard to determine, Singfield, 389 F.3d at 564, and that Plaintiff has called into question the accuracy of Defendants' reasons.

Therefore, the Court finds that summary judgment is not appropriate on either of Plaintiff's age discrimination claims.

## C. Retaliation Claims

Title VII and the ADEA prohibit employers from discriminating against employees who have opposed any practices or participated in any manner in an investigation, proceeding or hearing of the employer 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(a). Chapter 4112.02(I) of the Ohio Revised Code prohibits an employer from discriminating against an employee who has opposed any unlawful discriminatory practice or because that employee has made a charge or participated in any manner in an investigation, proceeding or hearing. Ohio Rev. Code Ann. §4112.02(I). Title VII, ADEA and Ohio retaliation claims are all analyzed under the McDonnell Douglas framework, as described above. See Imwalle v. Reliance Medical Products, Inc., 515 F.3d 531, 544 (6th Cir. 2008).

### 1. Prima Facie Case

To prove a prima facie case of retaliation under the McDonnell Douglas framework the employee must prove that (1) he engaged in activity that Title VII protects; (2) the employer knew that he engaged in this protected activity; (3) the employer subsequently took employment action adverse to employee; and (4) causal connection between protected activity and adverse employment action exists. Abbott v. Crown Motor Co., Inc., 348 F.3d 537, 542 (6th Cir 2003).

In order to establish the causal connection required in the fourth prong, the employee must produce evidence sufficient to infer the employer would not have acted had the employee not engaged in protected activity. Id. at 543. If the protected activity and adverse employment action are acutely near in time, that close proximity can serve as indirect evidence to infer retaliation. DiCarlo v. Potter, 358 F.3d 408, 422 (6th Cir. 2004).

Defendants argue that summary judgment is appropriate on Plaintiff's retaliation claims because he is unable to prove a prima facie case (doc. 28). Specifically, Defendants argue that Jeff-Cartier and Potter considered terminating Plaintiff three months before Plaintiff filed his EEOC charge (Id.). Defendants emphasize that Plaintiff was not terminated until more than one year after he filed the EEOC charge (Id.). Therefore, Defendants assert that Plaintiff will be unable to establish the required causal connection of a prima facie case of retaliation (Id.).

Plaintiff responds by alleging four separate acts of retaliation; (1) failure to promote; (2) placement on a PIP; (3) a poor performance appraisal; and (4) termination (doc. 30). Plaintiff further asserts he can establish a prima facie case for each of these instances of alleged retaliation (Id.).

First, Plaintiff claims he was retaliated against in 2005 after he complained to Hanover and Fawley about race issues at UHI (Id.). Plaintiff alleges that following this incident, Defendants

30

retaliated against Plaintiff by removing the posting before he was able to apply, effectively preventing him from applying to the third position (<u>Id</u>.).

Next, Plaintiff contends that he was retaliated against in April of 2006 when Defendants placed him on a PIP after he complained about not being promoted to the Division Director of Support Services position (<u>Id</u>.). Plaintiff claims that during the meeting where Kingsbury placed him on the PIP, Kingsbury told him that he could not trust him (<u>Id</u>.). Plaintiff asserts that this statement is direct evidence of retaliation (<u>Id</u>.). Plaintiff further asserts that even if the Court does not find that Kingsbury's statement was direct evidence of retaliation, then a causal connection can be inferred between the complaints and the PIP (<u>Id</u>.). Plaintiff cites <u>Burlington Northern & Santa Fe Rwy. V. White</u> as evidence that being placed on a PIP is an adverse job action. (<u>Id</u>. <u>citing</u> 126 S.Ct. 2405, 2414 (2006)).

Third, Plaintiff claims that his poor performance evaluation in December of 2006 was retaliation in response to his EEOC charge filed in October 2006 (<u>Id</u>.). Plaintiff argues that the brief period between when he filed his EEOC charge and when Defendants issued him his first poor performance appraisal is relevant to causation (<u>Id</u>.). Plaintiff further claims that a poor performance appraisal is an adverse action under <u>White</u> (<u>Id</u>. <u>citing</u> 126 S.Ct. 2405, 2414).

Plaintiff finally asserts that Defendants retaliated against him for his complaints about race issues at UHI by terminating him (Id.). Plaintiff claims he can prove a prima facie case of retaliation and establish (1) Plaintiff complained about race and age discrimination; (2) Defendants were aware of his complaints; (3) Plaintiff was terminated; (4) a causal connection exists between Plaintiff's complaints and his termination. Plaintiff notes the gap in time between when he filed his EEOC charge in October 2006 and his ultimate termination in January of 2008 does not impede the finding of causality (Id. citing Ford v. GMC, 305 F.3d 545, 553 (6th Cir. 2002)).

Defendants reply by contending that Plaintiff has failed to state a prima facie case of retaliation (doc. 42). As an example, Defendants contend there is no causal connection between Plaintiff's complaints to Hanover and Fawley and Liska's decision to post the Divisional Director of Support Services position or Potter's recommendation that Plaintiff be terminated (Id.). Defendants further contend that Plaintiff offers no evidence and will be unable that any reason proffered by Defendants is only pretext (Id.).

The Court notes that Defendants do not dispute that Plaintiff engaged in a protected act, Defendants knew about protected acts, and Defendants took adverse employment action against Plaintiff. However, Defendants do argue that the time

which passed between Plaintiff's protected acts and the adverse employment action is too long to infer retaliation.

In response to all of Plaintiff's retaliation claims, the Court notes Defendants' contentions concerning the lack of temporal proximity between Plaintiff's complaints and Defendants' actions. However, as the Sixth Circuit has emphasized in Dixon v. Gonzales, "it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." 481 F.3d 324, 335 (6th Cir. 2007). Therefore, these gaps in time do not inevitably foreclose the finding of a causal connection and there remains a genuine issue of material fact as to whether a causal connection exists between Plaintiff's complaints and Defendants' acts. The Court finds that summary judgment is not proper on the contention that Plaintiff cannot establish a prima facie case of retaliation on any of the instances.

## 2. Legitimate, Non-Discriminatory Reason

The employer must show a legitimate, non-retaliatory explanation for their acts, but are not required to further prove that the proffered reasons were their actual motivations. West v. Fred Wright Constr. Co., 756 F.2d 31 (6th Cir. 1985).

Defendants claim that they have met their burden of articulating a legitimate, non-retaliatory reason for Plaintiff's

termination (doc. 28).

Plaintiff responds and acknowledges that Defendants will likely be able to articulate a non-discriminatory reason for all four actions taken against Plaintiff (doc. 30). In response to Plaintiff's failure to promote claim, Plaintiff notes that Defendants will cite Plaintiff's failure to apply or Potter's qualifications (Id.). In response to Plaintiff's PIP claim, Plaintiff expects Defendants to articulate that Plaintiff had a history of poor performance (Id.). As to Plaintiff's poor performance appraisal claim, Plaintiff notes that Defendants will cite a number of alleged performance issues that took place in 2006 (Id.). Finally, in response to Plaintiff's termination claim, Plaintiff previously acknowledged Defendants' reason of mishandling of money (Id.). Plaintiff contends that he will be able to establish that each of these reasons was merely a pretext (Id.).

The Court finds that Defendants have satisfied their burden of producing legitimate, non-retaliatory reasons for the actions taken against Plaintiff.

### 3. Pretext

In order to prove pretext, the employee must show that the proffered reason (1) has no basis in fact; (2) did not actually motivate adverse action; or (3) was insufficient to motivate adverse action. Abbott, 348 F.3d at 542.

34

Defendants allege that Plaintiff will be unable to prove pretext for the same reasons concerning the pretext in Plaintiff's race and age discrimination claims (doc. 28). Particularly, Defendants contend that (1) Defendants' reasons are based in fact; (2) the proffered reasons actually motivated Plaintiff's discharge; and (3) the proffered reasons were sufficient to warrant discharge (Id.).

In Plaintiff's reply, he alleges that all of the proffered reasons for the action taken against Plaintiff are mere pretexts, and that Defendants' actual motivation was to retaliate against Plaintiff for his complaints and EEOC charge (doc. 30). Plaintiff addresses each of Defendants' proffered reasons and explains that those reasons could not have actually motivated Plaintiff (Id.).

First, Plaintiff relies upon the reasons explained in his race and age discrimination claims to show that the reasons offered concerning the failure to promote Plaintiff are a pretext (Id.). Concerning Plaintiff's PIP claim, Plaintiff contends that his alleged poor performance could not have been the true explanation, because Plaintiff had no history of poor performance at that time (Id.). In response to the reason offered for Plaintiff's poor performance appraisal, Plaintiff asserts that the disciplinary actions cited for Plaintiff's poor performance were denied by Defendant and unsubstantiated (Id.). Finally, Plaintiff relies on

his argument in his race and age discrimination claims to show that Defendants' reason for termination is only a pretext (Id.).

Defendants reply by emphasizing that Plaintiff offers no evidence that Defendants' reasoning was a pretext of retaliation (doc. 42).

The Court notes Plaintiff may not rely solely on his prima facie evidence to establish pretext, but must introduce additional evidence which challenges the credibility of Defendants' proffered explanations. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000); Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1083-85 (6th Cir. 1994). However, Plaintiff has introduced evidence which calls into question Defendants' motivation and raises issues of material fact concerning Defendants' proffered, non-discriminatory reasons.

As discussed above, the parties dispute several facts surrounding the actions taken against Plaintiff. Specifically, the parties disagree over whether Plaintiff was prevented from applying to the Divisional Director of Support Services position, the accuracy of Plaintiff's disciplinary record, why Plaintiff was placed on a PIP, when Plaintiff learned that his cafeteria was experiencing thefts, and whether he took steps to correct the problem. Therefore, it is unclear whether Defendants' proffered reasons are factually accurate and the true motivation of Defendants' acts or whether their proffered reasons were merely

pretexts for retaliation against Plaintiff. In light of the existence of these genuine issues of material fact, the Court finds that summary judgment is not appropriate on Plaintiff's retaliation claims.

### D. The Health Alliance

Defendants assert Plaintiff has not properly asserted claims against THA and that they are entitled to summary judgment on all claims (doc. 28).

Plaintiff asserts that THA has been properly named as a Defendant in light of the complicated relationship between the two companies (doc. 30). Plaintiff further contends that the UHI actors who took action against Plaintiff were also employees of THA (Id.).

In their response, Defendants reassert that THA did not take action that caused Plaintiff harm (doc. 42). Defendants point to Plaintiff's allegations and allege that the only accusations against THA were general, system-wide discrimination claims rather than particular actions against Plaintiff (Id.). Defendants contend that Plaintiff himself was only associated with UHI and those who allegedly took action against him (e.g. Potter and Liska) were UHI employees acting on behalf of UHI (Id.). Finally, Defendants briefly assert that THA cannot be sued because THA was not a named respondent in Plaintiff's EEOC charge (Id.).

Title VII authorizes the filing of a suit only after an administrative charge has been filed with the EEOC. Generally, a party cannot be sued unless they were a respondent named in the charge. 42 U.S.C. § 2000e-5(f)(1); See Romain v. Kurek, 836 F.2d 241, 245 (6th Cir. 1985). However, the Sixth Circuit has recognized that a party may be sued without being named as a respondent in the EEOC charge if there is a clear identity of interest between the unnamed party and a party named in the EEOC charge. Id. citing Jones v. Truck Drivers' Local Union No. 299, 748 F.2d 1083 (6th Cir. 1984).

The Sixth Circuit adopted two tests to determine if a party shares an interest with another party named in the EEOC charge. Alexander v. Local 496, Laborers' Int'l Union of North America, 177 F.3d 394, 411 citing Romain,, 836 F.2d at 245. The first test looks to determine whether the unnamed party had sufficient notice of the claim. Id. The second test considers four factors to determine the relationship between the named and unnamed parties, namely; (1) whether the role of the unnamed party could be reasonably ascertained by the plaintiff at the time of filing with the EEOC; (2) whether the interests of the named and unnamed parties are so similar that an attempt to gain voluntary compliance would be unnecessary; (3) whether the unnamed party's absence from the EEOC proceeding resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has in some

way represented that its relationship with the complainant is to be through the named party. Id. Courts in this Circuit have analyzed the interest of the parties under both tests. See Romain,, 836 F.2d at 245-246 (considering the relationship between the named party and the non-named party using both tests); See also Alexander, 177 F.3d 394, 411-413 (analyzing the interests of the parties under both tests).

While this Court notes that a party unnamed in an EEOC charge cannot be sued, the Sixth Circuit allows for certain "exceptions" when the unnamed party shares interests with the named party. In examining the relationship between THA and UHI under the two tests used by the Sixth Circuit, the Court finds that the record is unclear on relationship between THA and UHI.

Considering the first test used by the Sixth Circuit, the Court finds that there are genuine issues of material fact as to whether THA had notice of Plaintiff's EEOC charge. Defendants do not claim that THA was unaware of such a claim, though the facts offered by both parties suggest that UHI and THA were closely associated and overlapped in some places. Therefore, the Court finds that there is no evidence to show that THA was unaware of Plaintiff's EEOC charge.

With respect to the Sixth Circuit's second test, the Court finds that there are genuine issues of material fact as to (1) whether Plaintiff knew of THA's role in the management at UHI

at the time he filed his charge; (2) whether UHI and THA were so closely aligned that there would be no need to name THA in the EEOC charge; (3) whether THA suffered prejudice due to is absence from the EEOC charge; and (4) whether THA represented to Plaintiff that its connection Plaintiff was through UHI. Neither party elaborates on the exact nature of the relationship between UHI and THA, however, as noted above, there is some indication that UHI and THA operated closely with one another. Therefore, due to the question of material fact concerning the nature of the relationship between UHI and THA, the Court finds that summary judgment is not proper on the claims against THA.

## IV. Conclusion

For the foregoing reasons, the Court DENIES Defendants' Motion for Summary Judgment on all of Plaintiff's claims (doc. 28).

SO ORDERED.

Dated: July 13, 2009          /s/ S. Arthur Spiegel
                              S. Arthur Spiegel
                              United States Senior District Judge